# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

HOLLY BARRETT,

    **Plaintiffs,**

    **v.**                           **Case No. 25-CV-1283-SCD**

MANPOWER US, INC, and
PFIZER INC,

    **Defendant.**

---

## DECISION AND ORDER

---

Manpower, a staffing agency, assigned Holly Barrett to work at Pfizer's warehouse. Barrett takes oxycodone by prescription, and Pfizer supervisors raised concerns about that. After providing a doctor's note, and after only two weeks on the assignment, Barrett was discharged. Barrett alleges that Manpower and Pfizer, as joint employers, regarded her as disabled and terminated her in violation of the Americans with Disabilities Act.

Barrett filed charges with the EEOC. After receiving right-to-sue letters, Barrett filed suit in federal court against Manpower and Pfizer. Manpower moved to dismiss the complaint. Pfizer filed an answer and then moved to compel arbitration, or, in the alternative, for judgment on the pleadings. Manpower opposed the motion to compel arbitration. Then, Barrett filed an amended complaint with additional details surrounding the discharge. Pfizer moved to strike the amended complaint as untimely or, in the alternative, to compel arbitration or dismiss the amended complaint. Manpower again moved to dismiss the amended complaint.

Barrett's amended complaint is untimely, and I will grant Pfizer's motion to strike it. I will decide the motions related to the original complaint; motions related to the amended complaint are denied as moot.

## BACKGROUND

I take these facts from the complaint, from Barrett's EEOC charge against Pfizer,[1] and from the arbitration agreement between Barrett and Manpower. Holly Barrett from Kenosha (Wisconsin) worked for temporary staffing agency Manpower. *See* Compl. ¶ 6; Pfizer's Br. 8–9, ECF No. 19. Barrett signed an arbitration agreement with Manpower, excerpted below:

> I mutually agree that any claim, dispute, and/or controversy that either I may have *against ManpowerGroup (or its owners, parents, subsidiaries, affiliates, directors, officers, managers, employees, agents, or parties affiliated with their employee benefit and health plans)* . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, separation from employment, or any other association with Manpower shall be submitted to, resolved, and determined exclusively by a single arbitrator in binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.).

McGrath Decl. Ex. A, at 1, ECF No. 20-1 (emphasis added).

Manpower assigned Barrett to Pfizer's Pleasant Prairie warehouse as a temporary warehouse associate. Compl. ¶ 6. Barrett began orientation on June 5, 2023. Compl. ¶ 11. At the end of Barrett's first week, Pfizer's lead EHS quality manager told Barrett that medications were not allowed on the work floor (Barrett takes oxycodone for pain related to radiation damage from breast cancer treatment). *See* Compl. ¶¶ 3, 14. Barrett told Pfizer's second shift manager, LaToya Pitts, that Barrett would need to go to the breakroom to take medication every four hours. Compl. ¶ 15. Pitts asked what the medication was. Compl. ¶ 16. When

---

[1] Barrett's complaint referenced the EEOC charges. Pfizer attached Barrett's EEOC charge and the arbitration agreement with its motion for judgment on the pleadings. The incorporation-by-reference doctrine allows a defendant to submit a document referenced in a complaint to the court without converting a 12(b)(6) motion into a motion for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Barrett said oxycodone, Pitts said that Barrett could not operate heavy machinery or work in the warehouse while taking oxycodone. Compl. ¶ 16. About an hour later, "Chris Smith and Clare Bedolla, who identified themselves as HR," told Barrett that she needed to bring a doctor's note clearing her to work while taking oxycodone. Compl. ¶ 19.

The following Monday, June 12, 2023, Barrett brought a note from her doctor clearing her to operate heavy equipment while taking medications. Compl. ¶ 20. On Friday, "Pfizer's Chris Smith informed Plaintiff that her employment was terminated. Defendant Pfizer then reported same to Defendant Manpower on the same date." Compl. ¶ 21. The amended complaint adds detail in this section of the complaint. *See* Am. Compl. 4, ECF No. 21.

Barrett filed charges with the EEOC against Manpower and Pfizer. *See* Compl. ¶¶ 23–24; McGrath Decl. Ex. B, ECF No. 20-2. Barrett's EEOC charge against Pfizer said:

> I began my employment with the Respondent through a temporary employment agency on or about June 5, 2023, as a Warehouse Associate. I notified the Respondent that I need to take medication during work hours. The employment agency asked about the type of medication I was on and requested medical documentation before I returned to work. I emailed the documentation to the Respondent and employment agency. On or about June 19, 2023, I was discharged.

McGrath Decl. Ex. B, ECF No. 20-2.[2]

Barrett received right-to-sue letters around May 27, 2025. *See* Compl. ¶¶ 23–24. In August 2025, Barrett filed suit in federal court bringing one count of discrimination in violation of the Americans with Disabilities Act, alleging that Pfizer and Manpower terminated Barrett because they regarded her as disabled. *See* Compl. 2, 4. The matter was randomly assigned to me, and all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 5, 14, 15.

---

[2] Manpower references Barrett's EEOC charge but did not attatch a copy of it. *See* Manpower's Br. 4, ECF No. 17.

On October 14, 2025, Pfizer answered the complaint. *See* Answer, ECF No. 11. On November 10, 2025, Manpower moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). *See* ECF Nos. 16, 17. On November 21, 2025, Pfizer moved to compel arbitration or, in the alternative, for judgment on the pleadings under Rule 12(c). *See* ECF No. 18, 19. Pfizer attached the arbitration agreement between Manpower and Barrett; Barrett's EEOC charge; and an opinion and order granting Pfizer's motion to compel arbitration in a similar case. *See* ECF No. 20. Manpower opposed Pfizer's motion to compel arbitration, and Barrett adopted Manpower's argument. *See* ECF Nos. 22, 23. Pfizer submitted a reply brief. ECF No. 28.

Barrett did not respond to Manpower's motion to dismiss and instead filed an amended complaint on December 2, 2025 (forty-nine days after Pfizer's answer and twenty-two days after Manpower's motion to dismiss). *See* Am. Compl., ECF No. 21. Pfizer moved to strike Barrett's amended complaint as untimely under Rules 12(f) and 15(a)(1). *See* ECF No. 24. Barrett's amended complaint is untimely, and she did not obtain opposing parties' consent or the court's leave. A plaintiff may amend her complaint once as a matter of course no later than 21 days after service of a responsive pleading *or* 21 days after service of a motion under Rule 12(b), *whichever is earlier*. Fed. R. Civ. Proc. 15(a)(1)(A) (emphasis added). I will therefore not consider the amended complaint or motions related to the amended complaint.

**LEGAL STANDARDS**

**I.      Motion to Compel Arbitration**

Pfizer has moved to compel arbitration under the Federal Arbitration Act. Under the FAA, three elements must be shown to compel arbitration: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. § 4. "The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Inferences are drawn in favor of the non-moving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**II.      Motion to Dismiss and Motion for Judgment on the Pleadings**

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss for failure to state a claim, the . . . complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 821 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a Rule 12(b)(6) motion, courts must "accept the well-pleaded facts in the complaint as true and draw reasonable inferences in the plaintiff's favor." *Bronson v. Ann & Robert H. Lurie Child.'s Hosp.*, 69 F.4th 437, 448 (7th Cir. 2023) (citing *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523

5

(7th Cir. 2022)). "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014).

## DISCUSSION

Pfizer presents three pathways to enforce Barrett and Manpower's arbitration agreement: as a third-party beneficiary, under equitable estoppel, or because the claims against Manpower and Pfizer are intimately intertwined. Pfizer also moves for judgment on the pleadings, and Manpower moves to dismiss the complaint. In support of these motions, Manpower and Pfizer argue that first, Barrett failed to plausibly allege that the defendants are joint employers; second, Barrett did not exhaust a "regarded as" claim in her EEOC charges; and third, Barrett did not state a plausible "regarded as" claim.

**I.      Pfizer has not demonstrated that the arbitration agreement between Barrett and Manpower requires Barrett to arbitrate her claim against Pfizer.**

Ordinarily, a non-signatory cannot enforce an arbitration agreement. However, a "nonparty may invoke an arbitration clause if the ordinary principles of state contract law permit it to do so." *Scheurer v. Fromm Fam. Foods LLC*, 202 F. Supp. 3d 1040, 1045 (W.D. Wis. 2016), aff'd, 863 F.3d 748 (7th Cir. 2017). The Supreme Court has "identified assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary, waiver, and estoppel among those state law principles that could govern who may enforce the agreement." *Scheurer*, 863 F.3d at 753 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Pfizer asserts that, even though it didn't sign the arbitration agreement, it can enforce

arbitration as a third-party beneficiary, under equitable estoppel, or because the claims against Pfizer and Manpower are "intimately intertwined." Pfizer's Br. 7–12, ECF No. 19.

Wisconsin law provides that a third-party beneficiary can enforce an arbitration agreement if the signatories "specifically intended the agreement to benefit" the third-party, or a class to which the third-party belongs. *Scheurer,* 202 F. Supp. at 1045 (citing *Milwaukee Area Tech. Coll. v. Frontier Adjusters of Milwaukee*, 2008 WI App 76, ¶ 20, 752 N.W.2d 396). "[T]he precise identity of the third-party beneficiary need not be ascertainable at the time of the agreement so long as the agreement specifies or identifies a group or class to whom the party must belong to benefit thereby." *Pappas v. Jack O. A. Nelsen Agency, Inc.*, 260 N.W.2d 721, 725 (Wis. 1978). "Intent can be established by specific language in the . . . agreement or by the totality of the circumstances." *Scheurer,* 202 F. Supp. at 1045 (citing *Becker v. Crispell-Snyder, Inc.*, 2009 WI App 24, ¶¶ 11, 14, 763 N.W.2d 192).

Here, the language in the arbitration agreement establishes that Manpower did not intend for clients to benefit from its own arbitration agreements with employees. In the agreement, no language "specifies or identifies" Manpower's clients as a class contemplated by the agreement. The agreement says that arbitration would apply to Barrett's claims "against ManpowerGroup (or its owners, parents, subsidiaries, affiliates, directors, officers, managers, employees, agents, or parties affiliated with their employee benefit and health plans)." This list could have—but doesn't—include clients—an important category for a staffing agency. Under the negative implication canon, "a specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned, even when all such matters would have been inferred had none been expressed." *Goebel v. First Fed. Sav. & Loan Asso.*, 266 N.W.2d 352, 355 (Wis. 1978) (citing

Corbin on Contracts (hornbook ed., 1952), sec. 554, p. 522). Based on the language in the arbitration agreement, Manpower and Barrett did not specifically intend for clients to benefit from their arbitration agreement. Therefore, Pfizer is not a third-party beneficiary and cannot compel Barrett to arbitrate under that doctrine.

Pfizer concedes that Wisconsin courts have not yet applied equitable estoppel nor intimately intertwined theories when a non-signatory seeks to compel arbitration. *See* Pfizer's Br. 10–12, ECF No. 19. Under Wisconsin law, equitable estoppel requires "(1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." *Milas v. Labor Ass'n*, 571 N.W.2d 656, 660 (Wis. 1997). "Wisconsin courts and federal district courts applying Wisconsin law have rejected equitable estoppel claims when the party seeking to apply estoppel could not show specific facts supporting reasonable and detrimental reliance." *Scheurer*, 863 F.3d at 753.

For example, in *Scheurer v. Fromm Family Foods*, the non-signatory client had no evidence to suggest that it relied on—"or even knew of"—the arbitration agreement. 202 F. Supp. 3d at 1044. Even if the record contained this evidence, the non-signatory hadn't shown why "its reliance was reasonable, given that it was not a party to the agreement." *Id.* So too here. As the party seeking to invoke estoppel, Pfizer must show specific facts to show its reasonable and detrimental reliance on the arbitration agreement. There's no evidence that Pfizer even knew of an arbitration agreement when it accepted Barrett's assignment. Even if the record did contain this evidence, Pfizer still hasn't shown why this reliance would be reasonable, given that it was not a party to the agreement. Without facts to support reasonable and detrimental reliance, Pfizer cannot invoke equitable estoppel to compel arbitration.

Relying on cases from other districts, Pfizer argues that Manpower and Pfizer as entities are so intimately intertwined that failing to compel arbitration would eviscerate the arbitration agreement. *See* Pfizer Br. 9, ECF No. 19. This argument seems to concede that Pfizer is a joint employer with Manpower. *See* Pfizer's Br. 9–10, ECF No. 19; *see also Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 (7th Cir. 1981) (a party cannot "rely on the contract when it works to its advantage and repudiate it when it works to its disadvantage."). Here, Pfizer does not supply argument or evidence for why it and Manpower are intimately intertwined. Barrett's complaint is imprecise in alleging some facts about "defendants" generally, but it also alleges facts about Pfizer specifically. Accordingly, failing to compel arbitration would not eviscerate the agreement between Manpower and Barrett.

Barrett's claim is also not inextricably intertwined with the arbitration agreement. *Scheurer* likened the "inextricably intertwined" approach to the Seventh Circuit's rule in *Hughes Masonry*: "the critical issue is whether a plaintiff's claims are connected to an underlying contract that contains an arbitration clause." *Scheurer*, 202 F. Supp. 3d at 1045 (citing *Hughes Masonry Co.*, 659 F.2d at 839). In *Hughes Masonry*, a contract, which contained an arbitration provision, provided the basis for a contract-breach claim against a non-signatory. Applying equitable estoppel, the court found the plaintiff could not assert a contract-breach claim against the non-signatory *and* also attempt to circumvent the arbitration provision. *Hughes Masonry Co.*, 659 F.2d at 838–39. The contract provided the cause of action against the non-signatory; therefore, the contract would be enforced—including the arbitration provision.

On the other hand, in *Scheurer*, Title VII provided the basis for the claim. The non-signatory's liability would "turn on whether it discriminated against [the plaintiff] on the basis of sex, and on whether it retaliated against her, not on whether it breached a provision of the application agreement." *Scheurer*, 202 F. Supp. 3d at 1045. Here, as in *Scheurer*, federal statute and not contract provides the basis for Barrett's claim. Therefore, Barrett's claim is not inextricably intertwined with the arbitration agreement.

*Hall v. Pfizer*, a similar case in the Western District of Michigan, does not help Pfizer. *Hall v. Pfizer*, Case No. 1:24-cv-65, Opinion and Order Granting Mot. to Compel Arbitration 6 n.2, ECF No. 7 (W.D. Mich. January 29, 2025). The order in question specifically noted that the plaintiff did not challenge the non-signatory issue: "Pfizer devotes approximately four-and-a-half pages of its brief to argue and support the assertion that it can enforce the arbitration agreement even though it did not sign the agreement. Hall does not argue otherwise." *Id.* (internal citation omitted). Obviously, the parties raised different arguments here.

Under the FAA, Pfizer needs to show a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. Applying the standard for summary judgment, Pfizer has not shown that, under principles of Wisconsin contract law, this dispute is within the scope of the arbitration agreement between Barrett and Manpower.

## II.     Barrett states a plausible claim against Pfizer, but not against Manpower.

Turning to the merits motions, Manpower and Pfizer raise three pleading deficiencies in Barrett's complaint. First, Barrett did not plausibly allege that each defendant was Barrett's employer for ADA liability. Second, Barrett's EEOC charges did not pursue a "regarded as" theory of disability. And third, Barrett did not allege a plausible "regarded as" claim.

**A.      Barrett alleged enough facts to support joint-employer liability against Pfizer, but not against Manpower.**

The ADA prohibits covered entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). For ADA liability, Barrett must establish that she was "employed by" Manpower or Pfizer. *See* 42 U.S.C. § 12111(4).

"In light of the complex relationships that sometimes exist between individuals and the modern entities for which they work, courts have fashioned a number of tests that determine when a particular employer may be subject to liability under the ADA and related civil rights statutes." *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 812 (7th Cir. 2014). "The Seventh Circuit has recognized joint employer status between a temporary services agency and its client in the labor law context where 'two employers exert significant control over the same employees.'" *Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, 2013 U.S. Dist. LEXIS 61081, at *6 (N.D. Ill. Apr. 29, 2013) (quoting *NLRB v. Western Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987)). To find an employer-employee relationship, the court considers:

> (1) the extent of the employers' control and supervision over the worker, including directions on scheduling and performance of work;
>
> (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place;
>
> (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations;
>
> (4) method and form of payment and benefits; and
>
> (5) length of job commitment and/or expectations.

*Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 379 (7th Cir.) (citation modified). The first factor, which includes hiring and firing power, is the most important. *See Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 703 (7th Cir. 2015).

"This is a fact-intensive inquiry that typically requires further development through discovery." *Nealon v. Int'l Bhd. of Teamsters*, No. 23 C 16487, 2025 WL 582212, 2025 U.S. Dist. LEXIS 185701, at *10–11 (N.D. Ill. Sep. 22, 2025). Accordingly, "[a]t the pleading stage, a plaintiff need only allege sufficient facts to support a theory that the defendant exercised enough control over her to qualify as a joint employer." *Claussen v. Muchowski*, No. 21 CV 05316, 2022 WL 4465931, 2022 U.S. Dist. LEXIS 173680, at *9 (N.D. Ill. Sep. 26, 2022); *see also Nor v. Alrashid*, 20 C 7470, 2022 U.S. Dist. LEXIS 47553, 2022 WL 815542, at *6 (N.D. Ill. Mar. 17, 2022).

### 1. Barrett's complaint does not allege that Manpower employed Barrett as a joint employer.

In her complaint, Barrett alleged that both defendants employed her "as joint employers." Compl. ¶ 7. This is a legal conclusion that is not entitled to the presumption of truth. *See Whitaker*, 772 F.3d at 812 ("joint employer" is a legal characterization, not a fact); *Shah*, 2013 U.S. Dist. LEXIS 61081, at *10. After excising allegations that are not entitled to the presumption, the remaining allegations against Manpower do not establish that Manpower employed Barrett as a joint employer.

Barrett's complaint alleges that Barrett "was an employee of Manpower," and refers to job duties and training for "defendants," plural. *See* Compl. ¶¶ 11–13. Barrett initially spoke with Pfizer's EHS quality manager, and then Pfizer's second shift lead/manager, about her medication. *See* Compl. ¶¶ 14–16. Barrett alleges that "Chris Smith and Clare Bedolla, who identified themselves as HR," spoke with her about supplying a doctor's note, and the

complaint later specifies that Chris Smith worked for Pfizer. *See* Compl. ¶¶ 19, 21; *but see* Pfizer's Answer, ECF No. 11 (denying that Pfizer employed anyone named Chris Smith). Barrett alleges that "Pfizer's Chris Smith informed [Barrett] that her employment was terminated. Defendant Pfizer reported the same to Defendant Manpower on the same date." Compl. ¶ 21. The complaint also alleges that both "defendants provided false and misleading statements to plaintiff regarding the reason(s) for her termination," but doesn't explain what these statements were or who said them. *See* Compl. ¶ 22.

These allegations do not establish that Manpower exercised control or supervision over Barrett's work. Barrett alleges that she was employed by Manpower, which supports an inference that Manpower had hiring authority over Barrett. According to the complaint, that's where Manpower's authority ends. Barrett mentions two supervisors, both Pfizer employees. Barrett does not allege that Manpower managed her schedule or training during her two weeks at Pfizer's warehouse. Barrett does not allege that Manpower played any role in Barrett's discharge: the complaint alleges only that Pfizer "terminated" Barrett and then informed Manpower of its decision; the complaint doesn't actually allege that Manpower terminated Barrett. The complaint is silent on the other *Knight* factors.

Although the joint-employer inquiry is fact-intensive, Barrett has not pled the minimum facts necessary to support an inference that Manpower exercised enough control over Barrett to be her joint employer. Therefore, Barrett has not stated a plausible claim against Manpower.

        **2.    Barrett's complaint alleges that Pfizer employed Barrett as a joint employer.**

Barrett's complaint contains more allegations about Pfizer's control and supervision. As previously mentioned, Barrett spoke with two Pfizer supervisors, supporting an inference

that Pfizer supervised Barrett's work. Barrett alleges that at least one individual from Pfizer's HR told Barrett she needed to provide a doctor's note, and later informed Barrett that she was "terminated." This supports an inference that Pfizer had control over ending Barrett's assignment. Again, allegations regarding other *Knight* factors are lacking. But at the pleading stage, taking the well-pleaded allegations as true and drawing all inferences in Barrett's favor, Barrett has alleged sufficient facts to support an inference that Pfizer exercised control over her as a joint employer, specifically in exercising supervision and firing power.

**B.      Barrett's "regarded as" claim is reasonably related to the EEOC charge.**

Barrett brings a count for "regarded as" disability discrimination based on Pfizer incorrectly regarding Barrett as disabled and terminating her on that basis. Pfizer argues that Barrett's EEOC charge did not include a "regarded as" claim, so Barrett's complaint must be dismissed.

Generally, an ADA plaintiff must exhaust her claim with the EEOC prior to suing in district court. This rule "gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). However, "because most EEOC charges are completed by laypersons rather than by lawyers," an ADA plaintiff "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The test is "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* "The claims are not alike or reasonably related unless there is a factual

relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (emphasis in original).

"Under any disability discrimination claim, a plaintiff must plead and prove that she is disabled under the ADA." *McDade v. Weston Cnty. Hosp. Dist.*, No. 24-8031, 2025 WL 415481, 2025 U.S. App. LEXIS 2659, at *13 (10th Cir. Feb. 6, 2025). "Disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual;" "a record of such an impairment;" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

The court looks to the factual basis in the EEOC charge to see if it is reasonably related to the facts alleged in the federal complaint. Here, the EEOC charge provided a short summary of the allegations: Barrett raised her medical needs to supervisors; she provided documentation; she was discharged. The EEOC charge concluded by saying Barrett believed she was discharged because of a disability.

The EEOC charge did not specify which of the ADA's definitions of disability Barrett believed applied to her. Barrett didn't specify "actual" disability or "regarded as" disability. And "[t]he definition of disability encompasses both." *Larimer v. IBM, Corp.*, No. 02 C 3160, 2003 U.S. Dist. LEXIS 7396, at *34 (N.D. Ill. April 29, 2003). The allegations in the charge are reasonably related to the claims in the complaint because the charge describes the same conduct and implicates the same individuals as the complaint. Further, even if Barrett had

specifically alleged an "actual" disability in the EEOC charge, courts in the Seventh Circuit "have frequently found that 'regarded as' disability claims were 'reasonably related' to 'actual disability' claims made in preceding EEOC filings." *Richardson v. Chi. Transit Auth.*, Case No. 16-cv-3027, 2016 WL 6070359, 2016 U.S. Dist. LEXIS 143485, at *9–10 (N.D. Ill. Oct. 17, 2016) (collecting cases).

In *McDade v. Weston County Hospital*, the complainant unambiguously alleged an actual disability in her EEOC charge and brought a claim for failure to accommodate. *McDade v. Weston Cnty.*, 2025 U.S. Dist. LEXIS 2659, at *11–13. The Tenth Circuit found that McDade had not exhausted a "regarded as" claim. However, the court did "not mean to suggest that to pursue an ADA claim or theory in civil litigation, a plaintiff must expressly invoke a particular legal incantation in the EEOC charge." *Id.* at *12. Rather, McDade's charge "unambiguously alleged the existence of an actual disability, and it [was] otherwise devoid of any facts from which [the state agency] or the EEOC could surmise that Ms. McDade's claims rested—either principally or in the alternative—on a theory that she was 'regarded as' disabled." *Id.* at 13. Here, unlike in *McDade*, Barrett's EEOC charge did not allege an actual disability, nor did it rely on a theory of discrimination that applied only to "actual" disability cases. The factual basis in Barrett's EEOC charge is reasonably related to her claim in federal court. The details in Barrett's federal complaint would reasonably be expected to grow out of an EEOC investigation into the allegations in the charge.

Accordingly, Barrett exhausted her claim with the EEOC prior to bringing this suit.

**C.     Barrett stated a plausible claim against Pfizer.**

As previously discussed, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove an ADA violation, "a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016) (citing *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 286–87 (7th Cir. 2015)). Courts should construe the definition of disability "in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). Barrett must plead sufficient facts to support an inference that she suffered an adverse employment action because of an actual or perceived impairment, "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Barrett alleged that Pfizer discharged her because she needed to take oxycodone while working. Pfizer may have regarded Barrett as disabled based on a perception that the medication's side effects created an impairment. *See Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1051–52 (treatment of a condition that is not itself disabling can be a disability); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 187–88 (3d Cir. 2010). Alternatively, Pfizer may have regarded Barrett as disabled based on the perception of an underlying impairment that necessitated taking oxycodone. *See Howard v. Norfolk S. Corp.*, Case No. 2:17-cv-02163-RDP, 2020 WL 5569922, 2020 U.S. Dist. LEXIS 170436, at *38 (N.D. Ala. Sept. 17, 2020) ("[A] reasonable jury could find that Defendant perceived Plaintiff as having an underlying impairment that necessitated his use of Oxycodone and Methadone."). These are possible inferences from the facts alleged. At this stage, Barrett has pled sufficient facts to permit an inference that Pfizer regarded Barrett as disabled and terminated her on that basis.

## CONCLUSION

Barrett raised a plausible claim against Pfizer, but not against Manpower. For all the foregoing reasons, the court **GRANTS** Pfizer's motion to strike the amended complaint, ECF No. 24. The court **DENIES as moot** Pfizer's motion to dismiss the amended complaint, ECF No. 24, and Manpower's motion to dismiss the amended complaint, ECF No. 26. The court **DENIES** Pfizer's motion to compel arbitration or for judgment on the pleadings, ECF No. 18. The court **GRANTS** Manpower's motion to dismiss claims against Manpower, ECF No. 16. The clerk will place the matter on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 2nd day of April, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge